**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| IGOR POPNIKOLOVSKI, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| UNITED STATES DEPARTMENT OF | ) |
| HOMELAND SECURITY, CITIZENSHIP | ) |
| AND IMMIGRATION SERVICES, | ) |
| ALEJANDRO MAYORKAS, IN HIS | ) No. 10 C 372 |
| OFFICIAL CAPACITY AS DIRECTOR | ) |
| OF THE UNITED STATES CITIZENSHIP | ) Judge Rebecca R. Pallmeyer |
| AND IMMIGRATION SERVICES, RUTH A. | ) |
| DOROCHOFF, IN HER OFFICIAL CAPACITY | ) |
| AS DIRECTOR OF THE USCIS | ) |
| CHICAGO DISTRICT OFFICE, | ) |
| ERIC HOLDER, ATTORNEY GENERAL | ) |
| OF THE UNITED STATES, JANET | ) |
| NAPOLITANO, SECRETARY OF | ) |
| THE DEPARTMENT OF HOMELAND | ) |
| SECURITY, ROBERT MUELLER, | ) |
| DIRECTOR OF THE FEDERAL BUREAU | ) |
| OF INVESTIGATION, AND | ) |
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Defendants. | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Igor Popnikolovski, a native of Macedonia, applied for U.S. citizenship and was interviewed by the U.S. Citizenship and Immigration Services ("USCIS") on April 9, 2009. The USCIS failed to act on his application for several months. Under 8 U.S.C. § 1447(b), if USCIS fails to make a determination within 120 days of an applicant's interview, the applicant may seek relief in the district court. That is exactly what Plaintiff did more than eight months after his interview when, rather than making a determination, USCIS issued a notice for an additional interview. Plaintiff did not participate in that additional interview, and USCIS promptly issued a decision denying Plaintiff's citizenship application. The decision, issued eight days after Plaintiff filed this action, relied in part on Plaintiff's refusal to participate in the interview. Because the court

concludes that a properly filed action under § 1447(b) vests the court with exclusive jurisdiction over the naturalization application, the subsequent denial by USCIS of Plaintiff's application is void. The court declines to decide Plaintiff's naturalization application on its merits, though, and remands the matter to USCIS with instructions.

**BACKGROUND**

Plaintiff has been a permanent resident of the United States since January 23, 2004. (Permanent Resident Card, Ex. 1 to Pl.'s Compl.) He achieved resident status through his wife who died before he applied for citizenship, and he has no children. (Initial Decision, Ex. B to Defs.' Mem. in Support of Mot. to Dismiss (hereinafter "Defs.' Mem.").) Plaintiff owns a business and property in the United States, and he received a Master of Science in Engineering degree from Purdue University on August 3, 2007. (Group Ex. 5 to Pl.'s Brief in Opposition to Defs.' Mot. to Dismiss (hereinafter "Pl.'s Opposition").) Plaintiff divides his time between the United States and Macedonia, where he works as an electrician at the United States embassy in Skopje and cares for his elderly mother. (Ex. 6 to Pl.'s Opposition.)

On October 24, 2008, Plaintiff filed an application for naturalization ("N-400") with USCIS. (N-400 Appointment Notice, Ex. 2 to Pl.'s Compl.) He attended an initial interview conducted by USCIS on April 8, 2009, where he passed his English, United States history, and government tests. (N-652, Naturalization Interview Results, Ex. 7 to Pl.'s Opposition.) At the time of the interview, the USCIS interviewing officer issued a request for additional documentation, specifically, tax returns, W-2s, 1099 forms, bank statements, and certain medical records. (Decl. of Brenda Treml ¶ 5, Ex. A to Defs.' Mem.) Plaintiff complied with the request, providing some of the requested information on April 14, 2009, and the remainder on May 6, 2009. (*Id.* ¶ 6.) In September 2009, Plaintiff requested and received a status report on his application, but the record does not provide details concerning that report. (*Id.* ¶ 7.) Finally, on December 10, 2009, the USCIS interviewing officer directed Plaintiff to appear for another interview on January 22, 2010. (*Id.* ¶ 8.) Three days before

the interview, on January 19, 2010, Plaintiff's attorney filed this action.  Plaintiff appeared at the interview on January 22, 2010, but did not participate, instead asserting that this court had exclusive jurisdiction over the matter.  (*Id.* ¶ 10.)

In a written decision dated January 27, 2010, five days after the second interview, USCIS purported to deny Plaintiff's naturalization application for three reasons.  (Initial Decision, Ex. B to Defs.' Mem.)  First, the decision stated that USCIS had received Plaintiff's N-400 application one day too early.  (*Id.* at 3.)  Plaintiff asserts that this was the first time he had been told of any such problem.  (Pl.'s Opposition, at 12.)  Under 8 U.S.C. § 1427, Plaintiff was eligible for citizenship on January 23, 2009, five years after he became a permanent resident, and under 8 C.F.R. § 334.2(b), a naturalization application may be filed "up to 90 days prior to the completion of the required period of residence."  October 24, 2008, the date on which USCIS received Plaintiff's application is 91 days before January 23, 2009.  The court notes that under the language of 8 U.S.C. § 1445(a), which allows certain applications to be filed up to *three months* before an applicant meets the residence requirement, Plaintiff's application may have been timely: October 24, 2008 is less than three months before January 23, 2009.  The regulation at issue, 8 C.F.R. § 334.2(b), states that the 90 days may include that three-month period, but unless one of the three months is February, a three-month period will *always* be longer than 90 days.  Given this confusion,  denying a naturalization application on the previously unnoted fact that the application was received just one day early appears inequitable.

USCIS's second reason for denying Plaintiff's application was Plaintiff's failure to show continuous residency in the United States.  (Initial Decision, Ex. B to Defs.' Mem., at 3-4.)  Plaintiff was living and working in Macedonia, and his brother in the United States was his only family tie to this country.  (*Id.*)  Plaintiff had provided USCIS with information about his elderly mother in Macedonia, for whom he was caring, but the decision stated that by refusing to answer questions about his absences from the United States at the second interview, Plaintiff "deprived himself of the

opportunity" to rebut the finding that he was not a continuous U.S. resident. (*Id.* at 4.) Finally, USCIS's decision rested on a ruling that Plaintiff's refusal to cooperate in the second interview constituted a "lack of prosecution." (*Id.*)

Defendants have moved to dismiss for lack of jurisdiction, arguing that USCIS's decision moots Plaintiff's case. Plaintiff responds that the decision does not moot his case because USCIS lacked jurisdiction to issue its decision once he had filed his complaint in this court. He asks that the court adjudicate his naturalization application itself.

## **DISCUSSION**

### **I.     Standard of Review**

When reviewing a motion to dismiss under Federal Rule of Civil Procedure 12(b)(1), the court will "accept as true all well-pleaded factual allegations, and draw reasonable inferences in favor of the plaintiff." *Evers v. Astrue*, 536 F.3d 651, 656 (7th Cir. 2008) (quotation omitted). The court may, however, "properly look beyond the jurisdictional allegations of the complaint and view whatever evidence has been submitted on the issue to determine whether in fact subject matter jurisdiction exists." *Apex Digital, Inc. v. Sears, Roebuck & Co.*, 572 F.3d 440, 444 (7th Cir. 2009) (quotation omitted). The party asserting jurisdiction bears the burden of proving that jurisdiction is proper. *United Phosphorus, Ltd. v. Angus Chemical Co.*, 322 F.3d 942, 946 (7th Cir. 2003).

### **II.    The Court's Exclusive Jurisdiction**

The central dispute is whether this court has exclusive jurisdiction over Plaintiff's application, or concurrent jurisdiction with USCIS. Consideration of this issue begins with the language of the statute:

> If there is a failure to make a determination under section 1446 of this title before the end of the 120-day period after the date on which the examination is conducted under such section, the applicant may apply to the United States district court for the district in which the applicant resides for a hearing on the matter. Such court has jurisdiction over the matter and may either determine the matter or remand the matter, with appropriate instructions, to the Service to determine the matter.

4

8 U.S.C. § 1447(b). As noted, USCIS conducted its examination of Plaintiff on April 8, 2009, but did not adjudicate his application for several months. On January 19, 2009, well after the 120 days had passed, Plaintiff filed suit in this court. Then on January 27, 2010, USCIS denied the application. If USCIS retained jurisdiction over Plaintiff's application, its decision would moot this case. If this court had exclusive jurisdiction, however, USCIS's denial would be void.

### A. § 1447(b) is Applicable to the Current Dispute

The court notes, first, that 8 U.S.C. § 1447(b) authorizes Plaintiff's action in this court. USCIS conducted Plaintiff's initial examination on April 8, 2009 but had not issued its decision when Plaintiff filed his complaint on January 19, 2010. Defendants contend that the § 1447(b) procedure is inappropriate in this case because USCIS requested additional materials from Plaintiff after his initial interview was completed. According to Defendants, the follow-up interview scheduled for January 22, 2010 was effectively a "continuation" of the initial interview. (Defs.' Reply in Support of Their Mot. to Dismiss or in the Alternative, for Remand (hereinafter "Defs' Reply"), at 1-2.) In other words, Defendants argue that the 120-day statutory deadline had not begun to run because the interview was never completed. The court disagrees based on the word "examination" in the statute. Although the text of § 1447(b) does not define the term "examination," its language satisfies the court that Congress intended "examination" to correspond to the date of the initial interview of a naturalization applicant.

The Seventh Circuit has yet to consider the question, but the Fifth Circuit has specifically addressed the meaning of the term "examination" in the context of § 1447(b). In *Walji v. Gonzales*, 500 F.3d 432, 436 (5th Cir. 2007), the court concluded that "the plain language suggests that the examination is a distinct, single event—the date on which the interview occurs—triggering the 120-day period, and not an ongoing fluid process encompassing the interview as well as the background investigation." *Accord Etape v. Chertoff*, 497 F.3d 379, 383 (4th Cir. 2007) (explaining that the "120-day period under § 1447(b) does not even begin to run until after the initial naturalization

examination.") The court finds the reasoning of *Walji* persuasive. Nothing in the statute suggests that the 120-day deadline does not begin to run until USCIS receives all of Plaintiff's materials, or until Plaintiff has concluded any subsequent follow-up interviews; the statute refers only to "the examination." Because Plaintiff's initial examination was completed on April 8, 2009, and more than 120 days had passed without a decision, Plaintiff properly filed this action pursuant to § 1447(b).

### B. The Statute Accords Exclusive Jurisdiction to the District Court

#### I. Case Law Recognizes the Court's Exclusive Jurisdiction

The more difficult question is whether § 1447(b) gives the district court exclusive jurisdiction to adjudicate naturalization petitions, once suit has been filed. On this issue, too, the Seventh Circuit has yet to rule, but three other Circuit courts have concluded that, once a plaintiff files suit under § 1447(b), the district court has exclusive jurisdiction to adjudicate the plaintiff's naturalization application. *Bustamante v. Napolitano*, 582 F.3d 403, 408 (2d. Cir. 2009); *Etape*, 497 F.3d at 383 *United States v. Hovsepian*, 359 F.3d 1144, 1164 (9th Cir. 2004) (*en banc*). Rulings in this district are in accord. *Zaidi v. Chertoff,* No. 06 C 1133, 2006 WL 3147722, at *3 (N.D. Ill. Nov. 1, 2006) (Kocoras, J.)*; Meraz v. Comfort,* No. 05 C 1094, 2006 WL 861859, at *2-3 (N. D. Ill. Mar. 9, 2006) (Gottschall, J.). Despite isolated precedent to the contrary, the court agrees and concludes that when Plaintiff filed suit in district court, he properly invoked § 1447(b), thereby vesting this court with exclusive jurisdiction over his case.

As other courts to consider the question have observed, the plain language of the statute gives district courts the power to either "determine the matter" or to "remand the matter." 8 U.S.C. § 1447(b). In *Hovsepian*, the Ninth Circuit rhetorically asked, "How can the court 'determine the matter' if the INS has the option to 'determine the matter,' too, and essentially force the court to accept its view?" *Hovsepian*, 359 F.3d at 1160. "Why would Congress need to provide for a 'remand' to the INS 'to determine the matter' if the INS retained jurisdiction to 'determine the matter'

6

all along?" *Id.*[1]*; see also Etape*, 497 F.3d at 383 (noting that a reading of concurrent jurisdiction would allow USCIS to divest district courts of their jurisdiction, a result inconsistent with a plain reading of the statute).

In urging this court to reach a different conclusion, Defendants note that § 1447(b) is distinguishable from other statutes that specifically contain the term "exclusive jurisdiction." (Defs'. Mem. at 8.) Indeed, where a statute does not explicitly grant exclusive jurisdiction to the federal courts, the Supreme Court presumes that state courts retain jurisdiction. *American National Red Cross v. S.G. & A.E.*, 505 U.S. 247, 259 n.10 (1992) (citing *Claflin v. Houseman*, 93 U.S. 130, 136, (1876)). Allowing state court jurisdiction is not the same as allowing a case to be adjudicated in state and federal courts *at the same time*, however, as the Second Circuit explained, § 1447(b) "contemplates something like a system of concurrent jurisdiction." *Bustamante*, 582 F.3d at 407. The applicant may choose between proceeding before USCIS or in district court, but once the applicant chooses to use § 1447(b), "the district court acquires jurisdiction that is 'exclusive' in the sense that USCIS is no longer empowered to decide the application." *Id.*

The language of the statute gives district courts the authority to "determine the matter" or to "remand the matter"—phrases suggesting that Congress intended for the district court to retain jurisdiction over an application unless and until it decides to remand the matter to USCIS. As the Fourth Circuit explained, "remand" means having the power to "send back," and permitting USCIS to exercise concurrent jurisdiction to determine a naturalization application would be contrary to Congressional intent; "there would be no need for the district court to send anything back—because the CIS would have had the matter all along." *Etape*, 497 F.3d at 383-84. Defendants are, therefore, correct that, in § 1447(b) "remand" means merely "the act or instance of sending

---

[1] Naturalization applications were decided by the Immigration and Naturalization Service ("INS") until March 1, 2003, when its duties were assumed by the USCIS. Pub. L. No. 107-296 (2002).

7

something . . . back for further action." (Defs.' Reply at 4, citing *K-Mart v. Cartier*, 486 U.S. 281, 291 (1988); Black's Law Dictionary (8th ed. 2004).)  The court cannot agree with Defendants' conclusion, however, that "sending something back for further action" implies that the agency to which it is sent retained jurisdiction over that case all along.

Defendants cite several cases that adopt the minority approach of concurrent jurisdiction, but the support used by those cases is less than airtight.  In *Xie v. Mukasey*, 575 F. Supp. 2d 963, 964 (E.D. Wis. 2008), the court relied on one district court case that was later reversed, *Bustamante v. Chertoff*, 533 F. Supp. 2d 373 (S.D.N.Y. 2008), *rev'd sub nom., Bustamante v. Napolitano*, 582 F.3d 403 (2nd Cir. 2009) and another, *Perry v. Gonzales*, 472 F. Supp. 2d 623, 630 (D.N.J. 2007), which itself relied on a district court decision that was later reversed, *Etape v. Chertoff*, 446 F. Supp.2d 408 (D. Md. 2006), *rev'd*, 497 F. 3d 379 (4th Cir. 2007).  Defendants cite *Al-Saleh v. Gonzales*, No. 06-604, 2007 WL 990145, at *2 (D. Utah Mar. 29, 2007) and *Kim v. Gonzales*, No. 07-1817, 2008 WL 1957739, at *3 (D. Colo. May 5, 2008), but those cases similarly relied on *Perry*.  Finally, *Hamdan v. Chertoff*, 626 F. Supp. 2d 1119, 1134 (D.N.M. 2007), relies on the dissenting opinion in *Etape*, and *Farah v. Gonzales*, No. Civ. 05-1944, 2006 WL 1116526, at *1-*2 (D. Minn. Apr. 26, 2006), relies on no precedent at all.  For the reasons discussed, this court will follow the reasoning of *Hovsepian*, *Etape*, and *Bustamante*, all of which carried out detailed analysis of the language, legislative history, and policy reasons for the conclusion that federal courts have exclusive jurisdiction over a naturalization application where the applicant has properly filed suit pursuant to § 1447(b).

### ii. Legislative History Does Not Support a Conclusion of Concurrent Jurisdiction

Defendants also attempt to rely on legislative history.  (Defs.' Mem. at 6.)  Specifically, Defendants urge that Congress must have intended to provide for concurrent jurisdiction because the word "exclusive" *was* found in the first iteration of § 1447(b), but was left out of the final version

8

of the statute. (*Id.*) That earlier version was as follows:

> Where there has been a failure to make a determination under [§ 1446] before the end of the 90-day period after the date on which the examination is conducted under such section, the United States district court for the district in which the applicant resides shall upon the demand of the petitioner exercise *exclusive jurisdiction* over the matter.

H.R. Rep. No. 101-187, at 34 (1989) (emphasis added). One possible reason for the change was a desire to give district courts the option of remanding to USCIS, an option not present in the earlier version of § 1447(b); "exclusive jurisdiction" may have meant only that the district court was required to adjudicate the naturalization application. *Bustamante*, 582 F.3d at 407 n.4. Moreover, other aspects of the legislative history support the court's conclusion. For example, there is the statement of Representative Morrison: In this legislation, *it is the applicant, not the government, who decides the place and the setting and the timeframe in which the application will be processed.* *Hovsepian*, 359 F.3d at 1164 (quoting 135 Cong. Rec. H4539-02, H4542). Defendants argue that the *Hovsepian* court relied on an inaccurate interpretation of legislative history because "courts have no authority to enforce a principle gleaned solely from legislative history that has no statutory reference point." *Shannon v. United States*, 512 U.S. 573, 583-84 (1994) (quotation and alterations omitted). The contention that the analysis set forth in *Hovsepian*, has "no statutory reference point" is inaccurate, however. As discussed above, the statute does express Congress's intent to give an applicant the option to file suit in district court after the 120-day deadline had passed.

The conclusion that the district court has exclusive jurisdiction promotes Congress's policy objectives in passing § 1447(b): to reduce waiting time for adjudication of naturalization applications, to streamline the process of naturalization applications by reducing duplication of analysis, to ensure consistency and fairness of naturalization applications, and to give applicants a choice of forum for adjudicating long-pending applications. *Hovsepian*, 359 F.3d at 1163-64. To permit the exercise of concurrent jurisdiction could result in significant inefficiencies if the court and agency simultaneously devote time and resources to adjudicating a plaintiff's application. The court

concludes that the legislative history and purpose support its ruling that once a lawsuit has been filed pursuant to § 1447(b), the statute vests exclusive jurisdiction in the district court.

### iii. *Brock* is Distinguishable.

Defendants' final challenge to the court's conclusion rests on a Supreme Court opinion that addresses an unrelated statutory scheme. In *Brock v. Pierce County*, 476 U.S. 253 (1986), the Court held that a statute requiring the Secretary of Labor to issue a final determination within 120 days did not prohibit the Secretary from acting after 120 days. *Brock* is readily distinguishable, however, because the statute at issue in that case said nothing about the consequences of exceeding the 120-day deadline. *Id.* at 259. The Court had to determine, in the absence of a clear statement, whether Congress intended an agency's failure to meet a statutory deadline to void the agency's action. *Id.* at 260. Here, the consequences of missing the deadline could not be more clear: such a failure gives an applicant the right to file suit in district court. *Bustamante*, 582 F.3d at 409*; Etape*, 497 F.3d at 384-85*; Hovsepian*, 359 F.3d at 1161. *Brock* stands for the proposition that courts must pay heed to Congressional intent on the issue of deadlines for agency action. *Etape*, 497 F.3d at 384. The court does so here, and concludes that Congress intended that, when 120 days elapse without a decision on a naturalization petition, the applicant may file suit in federal court, which then has the power to "determine" or "remand" the matter. While the case is in the district court, the agency is deprived of the power to act on the application.

## C. A Case or Controversy Exists

An Article III court must dismiss a case when it lacks subject matter jurisdiction because there is no case or controversy, and such case or controversy must exist at all stages of litigation. *Arizonans for Official English v. Arizona*, 520 U.S. 43, 67 (1997); *Qureshi v. Gonzales*, 442 F.3d 985, 988 (7th Cir. 2006). Defendants argue that this case is moot based on USCIS's decision denying Plaintiff's application. For the reasons explained above, however, once Plaintiff had filed his complaint under § 1447(b), jurisdiction over his application vested in this court, and USCIS no

longer had the power to adjudicate Plaintiff's application. *See Bustamante*, 582 F.3d at 407 ("When the naturalization applicant chooses to file a Section 1447(b) petition . . . USCIS is no longer empowered to decide the application."); *Zaidi,* No. 06 C 1133, 2006 WL 3147722, at *3 (finding that a USCIS decision is void when it is made after a plaintiff has already filed suit in federal district court). This court concludes that the January 27, 2010 USCIS decision denying Plaintiff's application is ineffective, so the case is not moot.

### III.     Remand is Warranted

Having concluded that it has exclusive jurisdiction over Plaintiff's naturalization application, the court considers Plaintiff's request that it grant the application. Plaintiff's alleged failure to exhaust his administrative remedies does not preclude this relief; the statutory provision Defendants invoke, 8 U.S.C. § 1421(c), is applicable in situations where, unlike here, the applicant's claim for naturalization has been decided. (Defs.' Reply at 3.) The administrative review apparatus is not irrelevant to this case, however. As courts have recognized in numerous contexts, respect for that apparatus counsels deference to agency determinations, even where, as in this case, the process is cumbersome and slow. In *INS v. Ventura*, 537 U.S. 12, 16 (2002), the Supreme Court cautioned that "[g]enerally speaking, a court . . . should remand a case to an agency for decision of a matter that statutes place primarily in agency hands. This principle has obvious importance in the immigration context." *Accord Antonishin v. Keisler*, 627 F. Supp. 2d 872, 877-78 (N.D. Ill. 2007) (remanding under § 1447(b)).

Indeed, Plaintiff's complaint sought, in the alternative, an order remanding to USCIS for a prompt decision. Not surprisingly, now that USCIS has in fact rendered an adverse decision, Plaintiff opposes remand. He argues that two grounds for USCIS's denial of his naturalization application (lack of continuous residence and lack of prosecution) would not have occurred but for USCIS's own delay, and that the third ground of denial (application filed too early) was never brought to his attention during the application process. (Pl.'s Opposition, at 12.) The court shares

11

Plaintiff's concerns over USCIS's reasoning, but believes remand is nevertheless appropriate. The agency has significant expertise that the court lacks in the immigration context. Moreover, a subsequent adverse decision will not necessarily be the agency's final decision; Plaintiff may seek review within the agency, and later, review in the Court of Appeals. The primary purpose of § 1447(b) is to require a prompt decision on a naturalization application, *Hovsepian*, 359 F.3d at 1163, and remand will achieve that purpose.

On remand, the court instructs USCIS to consider Plaintiff's application on its merits. The court directs, further, that USCIS set aside the "lack of prosecution" basis for denying Plaintiff's claim to the extent that this basis rests on Plaintiff's failure to participate in a second interview on January 22, 2010. By that date, Plaintiff had filed suit in federal court, thereby stripping USCIS of its jurisdiction to adjudicate Plaintiff's application. His failure to participate in a further interview cannot be deemed a failure to prosecute his application. The court directs, further, that USCIS render a timely decision to Plaintiff's naturalization application following a proper review. Should USCIS deny his application on remand, Plaintiff will be entitled to further administrative remedies, as well as judicial review following exhaustion of such remedies.

## **CONCLUSION**

As more than 120 days passed following Plaintiff's examination without a decision, Plaintiff had the right to file suit in federal court under § 1447(b). The filing vested exclusive jurisdiction in this court and the subsequent denial by USCIS of Plaintiff's application is void. Thus, Defendants' Motion to Dismiss [8] is denied. The court nevertheless declines to adjudicate Plaintiff's application on its merits, and accordingly remands the matter to USCIS with instructions.

ENTER:

Dated: July 14, 2010

_____
REBECCA R. PALLMEYER
United States District Judge